# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LABORERS LOCAL 235 BENEFIT FUNDS, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) Case: |
| Plaintiff, | ) ) CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS |
| v. | ) ) |
| SKECHERS USA, INC., ROBERT GREENBERG, JOHN VANDEMORE, and DAVID WEINBERG, | ) JURY TRIAL DEMANDED ) ) ) |
| Defendants. | ) ) ) ) |

Plaintiff Laborers Local 235 Benefit Funds ("Plaintiff"), by and through its attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge.  Plaintiff's information and belief is based upon, among other things, its counsel's investigation, which includes without limitation: (a) review and analysis of public filings made by Skechers USA, Inc. ("Skechers" or the "Company") with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by Defendants and other related non-parties; (c) review of news articles, shareholder communications, conference call transcripts, and postings on Skechers' website concerning the Company's public statements; and (d) review of other publicly available information concerning Skechers and the Individual Defendants.

## NATURE OF THE ACTION

1.      This is a class action on behalf of persons and entities that acquired Skechers common stock between October 20, 2017 and July 19, 2018, inclusive (the "Class Period"), against Defendants Skechers, its Founder and Chief Executive Officer ("CEO"), Robert Greenberg ("Greenberg"), its Chief Financial Officer ("CFO"), John Vandemore ("Vandemore"), and its Chief Operating Officer ("COO"), David Weinberg ("Weinberg") (collectively, "Defendants"), seeking to pursue remedies under the Securities Exchange Act of 1934, 15 U.S.C. § 78a et. seq. (the "Exchange Act").

2.      Skechers designs and markets branded footwear for men, women, and children. In recent years, Skechers has experienced rapid sales growth, particularly in the Company's international markets driven largely by unsustainable increases in the Company's Selling, General & Administrative expenses ("SG&A").

3.      Throughout the Class Period, in an effort to artificially inflate the price of Skechers' stock for the personal gain of the Company's founding family, Defendants continued to tout Skechers' strong sales growth, while falsely assuring investors that the Company was

1

"focus[ed] on … bringing … expenses in line with expected sales," and that the Company's disproportionate Selling, General and Administrative ("SG&A") expense growth was slowing down.

4.      However, in reality, Defendants knew that the Company did not have the operational infrastructure to meet the demand for its products in China and other international markets.  As a result, Defendants were not focusing on controlling SG&A expenses, nor would the overgrown SG&A expense growth abate.  Instead Defendants were relying on expensive, third-party operational solutions to drive its quarterly sales figures, creating illusory growth that was not sustainable.

5.      Armed with this knowledge, members of the Company's founding family, including Defendant Greenberg, dumped hundreds of thousands of Skechers shares during the Class Period for $32 million in proceeds.

6.      The truth began to emerge on April 18, 2018, when Skechers reported its first quarter 2018 financial results.  Contrary to Defendant's previous and repeated assurances of "leveraged" SG&A expenses, Skechers' reported SG&A expense growth of 23.4%, drastically outgrowing the Company's 16.5% sales growth for the same quarter. Even still, Defendant Weinberg continued to reassure investors that the Company would return to leverage on SG&A expenses the very next quarter.

7.      On this news, Skechers stock price declined $11.38, or 27%, from a closing price of $42.08 per share on April 19, 2018, to a closing price of $30.70 per share on April 20, 2018, wiping out $1.5 billion in market capitalization on unusually high trading volume.

8.      On July 19, 2018, the full truth emerged when Skechers announced its second quarter 2018 financial results.  While sales grew 10.6% from the same quarter the prior year, SG&A expenses grew by nearly twice that, or 19.7%, causing earnings from operations to decrease by 5.7%, and net earnings to decline by almost 24%.  Moreover, during the conference call with analysts, Defendants were now crystal clear that, in fact, they did not care about the

growth of SG&A expenses, telling one analyst, "We just don't necessarily think that way.  We're into growth."

9.      On this news, Skechers stock dropped $6.98, or 20.1%, from a closing price of $33.25 per share on July 19, 2018, to $26.27 per share on April 20, 2018, wiping out an additional $947 million in market cap.

10.     Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose: (1) that Skechers lacked the operational infrastructure to handle demand and sustain true sales growth in its international markets; (2) that Skechers was relying on expensive, third-party operational solutions to drive its sales growth; (3) that Skechers SG&A expenses would exceed sales growth for the foreseeable future; (4) that Skechers' international sales growth was not sustainable without the Company's heavy spending; and (5) that, as a result of the foregoing, Defendants' statements about Skechers' business, operations, and prospects, were materially false and/or misleading and/or lacked a reasonable basis.

11.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common stock when the truth was disclosed, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

12.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

13.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

14.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).  Many of the acts and omissions charged

herein, including the dissemination of materially false and misleading information to the investing public, and the omission of material information, occurred in this District. Skechers also has operations in this District, including the listing of the Company's stock on an exchange located in this District, the New York Stock Exchange ("NYSE").

15.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

16.     Plaintiff Laborers Local 235 Benefit Funds, as set forth in the accompanying certification, incorporated by reference herein, purchased Skechers common stock during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

17.     Defendant Skechers USA., Inc., is a corporation organized under the laws of the State of Delaware and maintains its principal executive offices at 228 Manhattan Beach Boulevard, Manhattan Beach, California, 90266.  Skechers' common stock trades on the NYSE under the symbol "SKX."

18.     Defendant Robert Greenberg ("Greenberg") was the CEO of Skechers at all relevant times.

19.     Defendant John Vandemore ("Vandemore") was the CFO of Skechers at all relevant times.

20.     Defendant David Weinberg ("Weinberg") was the COO of Skechers at all relevant times.

21.     Defendants Greenberg, Vandemore and Weinberg (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of Skechers' reports to the SEC, press releases and presentations to

securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pled herein.

### SUBSTANTIVE ALLEGATIONS
### Background

22.    Skechers is a global footwear and apparel brand that touts its "industry-leading growth" and "continued worldwide expansion." The Company designs, develops and markets more than 3,000 lifestyle and athletic footwear styles for men, women and children and sells its products in more than 170 countries.

23.    The Company was founded in 1992 by Robert Greenberg with his sons Jeffrey and Michael, who all currently serve as the Company's directors and as Skechers' CEO, President, and Senior Vice President, respectively.

24.    Skechers operates through three reportable sales segments: Domestic Wholesale Sales, International Wholesale Sales, which includes international direct subsidiary sales and international distributor sales, and Retail Sales, which includes Skechers' e-commerce sales.

25.    In recent years, Skechers has experienced rapid, unconstrained sales growth, especially in its International Wholesale Sales and e-commerce segments, largely as the result of growth in the Company's joint venture business in China.

26.    Since entering the Chinese market ten years ago, Skechers has seen sales grow 73% annually on average, with sales volume surging from $11.2 million in 2008 to more than $1.6 billion in 2017.   Skechers has also set up agreements with major retail brands and

commercial center operators and has invested heavily in e-commerce sales in China.  As a result, according to Willie Tan, Skechers' CEO for the Chinese mainland, Hong Kong, Republic of Korea and Southeast Asia markets, the Company expects its Chinese sales to top 15 billion yuan ($2.2 billion) in 2018.

27.     However, this growth has not come without costs.  A key driver of Skechers' sales growth has been the Company's disproportionately increasing non-production related expenses.

28.     In accordance with Generally Accepted Accounting Principles ("GAAP"), Skechers regularly reported its SG&A expenses as part of its income statements. SG&A expenses are defined as all non-production costs and are comprised of the operating expenses of a business that are not included in the costs of goods sold.  These include corporate expenses, facility expenses, and sales and marketing expenses. A company's operating profit is the difference between its gross profit and its SG&A (and depreciation) expenses.

29.     As shown in the chart below, in the fiscal quarters preceding the start of the Class Period, Skechers' SG&A expense growth regularly outpaced its net sales growth:

| Quarter | Net Sales Growth (vs same quarter prior year) | SG&A Growth (vs same quarter prior year) | Earnings from Operations (vs same quarter prior year) |
|---|---|---|---|
| Second Quarter 2016 | 9.7% | 20.05% | -10.6% |
| Third Quarter 2016 | 10.10% | 12.2% | 8.1% |
| Fourth Quarter 2016 | 5.8% | 16.17% | -48.3% |
| First Quarter 2017 | 9.6% | 16.86% | -10.2% |
| Second Quarter 2017 | 16.9% | 26.9% | -14.0% |

30.     As a result of the burgeoning SG&A expenses, for three out of the four fiscal quarters in the year preceding the start of the Class Period, earnings from operations actually declined by double-digit percentages.

31.     Analysts have repeatedly raised concerns about the Company's rising expenses, and throughout the Class Period, Defendants regularly assured investors that its expense growth

would abate, and that the Company would soon return to "leverage" on its SG&A expenses, *i.e.*, to grow sales faster than expenses.

### Defendants Issued Materially False and Misleading Statements and Omissions During the Class Period

32. By the start of the Class Period, Skechers appeared to finally be working towards geting its expense growth problems under control. On October 19, 2017, after the close of trading, Skechers issued a press release, filed with the SEC as an exhibit to Form 8-K signed by Defendant Weinberg, announcing third quarter 2017 financial results (the "3Q 2017 Press Release"). The 3Q 2017 Press Release stated:

> Quarterly net sales increased 16.2 percent to $1.095 billion compared to third quarter 2016. The growth was the result of a 25.7 percent increase in the Company's international wholesale business, a 1.4 percent increase in its domestic wholesale business, and an 18.6 percent increase in its Company-owned global retail business with total comp store sales increases of 4.4 percent.
>
> \*　　　\*　　　\*
>
> Third quarter selling expenses increased $21.8 million to $89.6 million, or 8.2 percent of sales, compared to $67.8 million, or 7.2 percent of sales, in the prior year's third quarter. The increase was primarily due to increased advertising expenses of $17.2 million, including $3.6 million to support our international subsidiary business, and an additional $3.5 million in selling commissions from its joint venture in South Korea.
>
> General and administrative expenses were $316.9 million, or 28.9 percent of sales, compared to $261.8 million, or 27.8 percent of sales, in the prior year's third quarter. The year-over-year quarterly increase was primarily due to Skechers' focus on long-term global growth. The increases included $18.1 million associated with the Company's 67 additional domestic and international retail stores—13 of which were opened in the third quarter, and $27.2 million to support its international growth in its joint venture and subsidiary businesses. Domestic wholesale general and administrative expenses in the third quarter increased $9.7 million year-over-year primarily due to increased headcount in the United States to support its brand worldwide, and improvements in its digital operations, as well as the expansion into new categories and brands.
>
> Mr. Weinberg added: "We remain committed to investing in the brand, product, infrastructure, and all areas that will drive further growth opportunities.
>
> \*　　　\*　　　\*
>
> Earnings from operations were $116.5 million or 10.6 percent of net sales, which was an increase of $13.1 million or 12.7 percent over the third quarter of 2016.

33. Thus, even though SG&A expenses still outgrew net sales, the Company returned to positive earnings from operations growth for the first time since the third quarter of 2016.

34.     Analysts appreciated the strong growth figures, but on the Company's earnings call continued to question the Company's ability to sustainably leverage its SG&A expenses and focus on improving overall earnings. In response to one such question, Defendant Weinberg assured investors that the Company would start to see leverage in its SG&A expenses:

**Christopher Svezia [Wedbush]**
Just want to go back to a question from earlier, when you talked about SG&A process, you start to think about next year, is there a scenario whereby you don't leverage? In other words, this year you're growing 15% and you're deleveraging roughly 200 hundred basis points or so on SG&A. Is there a revenue growth rate, given sort of the thought process around some investments in some markets, whereby you wouldn't leverage or is it just next year under most scenarios you leverage G&A expenses?

**David Weinberg**
Yeah, I'm not a person that would say, never say never. But I think your last characterization of, for the most part, yeah, most of the scenarios are positive leverage, I think that's correct.

35.     In response to a similar question, Defendant Weinberg also stated:

I would tell you the anticipation here <u>is that the rate of growth certainly in the G&A piece will come down from this year, as we end the year there are no new pieces to pick up.</u>

36.     As a result of Defendants' positive statements, the price of Skechers stock skyrocketed 40% from a close of $24.03 on October 19, 2017, to a close of $33.99 on October 20, 2017.

37.     On February 8, 2017, Skechers issued a press release, filed with the SEC as an exhibit to Form 8-K signed by Defendant Vandemore, announcing Skechers' fourth quarter and full year 2017 financial results (the "4Q 2017 Press Release"). While SG&A expenses still increased by 21.6% compared to the same quarter the year before, net sales increased by 27% and earnings from operations increased by 96%.

38.     During Skechers' conference call with analysts that evening, Defendant Vandemore stated:

Earnings from operations increased 96.9% to $55.7 million, representing 5.7% of sales and compared to 3.7% of sales in the prior year period. <u>The leverage we delivered this quarter gives a glimpse into the opportunity before us as we</u>

<u>continue to grow the top line and leverage our infrastructure investments of the past couple of years.</u>

39.     Similarly, Defendant Weinberg stated:

<u>Yeah, I think as far as advertising is concerned and it depends how you want to define it, not just media but our advertising in in-stores. We anticipate that the rate of growth will continue to slow as it has in the past and we'll be able to leverage some.</u> We are going to change focus and advertise obviously more in international and relatively stable in the U.S. We would think that we're okay in the U.S. and all increases will come from international.

So that's a very positive and we will match the sales. <u>And we anticipate it would stay in the same range, maybe slight leverage as we go through the year.</u>

40.     On March 1, 2018, Skechers filed its annual report on Form 10-K with the SEC signed by Defendants Greenberg, Vandemore and Weinberg (the "2017 10-K").  The 2017 10-K stated:

**2017 OVERVIEW**
In 2017, we focused on product development, growing our position in our domestic wholesale accounts, growing our international market share, opening retail stores in key locations worldwide, continuing to develop our global infrastructure, and balance sheet and expense management.

\*      \*      \*

**Balance sheet and expense management.** <u>During 2017, we continued to focus on managing our balance sheet and bringing our marketing expenses and general and administrative expenses in line with expected sales.</u>

41.     On March 7, 2018, Skechers participated in the 2018 UBS Global Consumer and Retail Conference.  During the Conference, several analysts asked Defendant Vandemore about the Company's expenses and its bottom-line growth. In response to one such question, Defendant Vandemore assured investors again that the Company was focused on leveraging its expenses:

…we believe we are reaching a bit of an inflection point in that material investments like that are not on the offing, other than continuing to grow the international markets in retail.  And we should start to see some leverage going forward…*we do expect leverage will certainly be in the year*…

42.     When asked to clarify, Defendant Vandemore again reiterated:

Yes.  Certainly, our expectation is that [operating margin] won't go backwards.  Again, absent any sort of single-source investment in a new country, new – bringing a distributorship on board or something to that effect."

43.     As a result of Defendants' positive statements during the Class Period, Skechers' stock price reached a Class Period high of $43.08 per share on April 9, 2018.

44.     The above statements identified in ¶¶32-42 were materially false and/or misleading and failed to disclose material adverse facts about the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants failed to disclose: (1) that Skechers lacked the operational infrastructure to handle demand and sustain true sales growth in its international markets; (2) that Skechers was relying on expensive, third-party operational solutions to prop-up its growth; (3) that Skechers's SG&A growth would exceed sales growth for the foreseeable future; (4) that Skechers' international sales growth was not sustainable without the Company's outsized SG&A expense growth; and (5) that, as a result of the foregoing, Defendants' statements about Skechers' business, operations, and prospects, were materially false and/or misleading and/or lacked a reasonable basis.

**Insiders Unload Millions of Dollars in Stock**

45.     From the start of the Class Period, with Skechers' stock price reaching prices not seen in more than two years, corporate insiders and members of the founding Greenberg family, with knowledge of the true facts surrounding the Company's uncontrolled SG&A expenses and unsustainable sales, sold hundreds of thousands of their Skechers shares for tens of millions of dollars in total proceeds.

46.     First, on October 20, 2017, director and Senior Vice President, Jeffrey Greenberg, sold 180,000 shares of stock at prices between $31.91 and $32.55 per share, for proceeds of approximately $5.76 million.

47.     Then just days later, on November 2, 2017, Skechers President and director, Michael Greenberg, sold 150,000 shares in an open market transaction at $31.91 per share, for proceeds of approximately $4.78 million.

48.     Then, between November 29, 2017 and December 1, 2017, Jeffrey Greenberg sold an additional 75,000 shares of Skechers stock for prices between $35.00 and $35.41, for proceeds of approximately $2.62 million.

49.     Then on December 19 and 20, 2017, as Skechers' stock price continued to approach Class Period highs, Defendant Greenberg, the Company's, director, CEO and founder sold 500,000 shares —approximately 65% of his total holdings — in open market transactions at prices between $37.53 and $37.69 per share, for total proceeds of $18.8 million.

50.     Suspiciously, Defendant Greenberg had bought the same 500,000 shares in October 2016 — just over a year earlier — at prices near two-year lows, also in open-market transactions.  This was Defendant Greenberg's first purchase in approximately ten years.  He was now selling the same number of shares at prices near two-year highs.

51.     In total, Defendant Greenberg, together with Michael and Jeffrey Greenberg, secured nearly $32 million in proceeds from their Class Period sales of Skechers stock.

**The Truth Begins to Emerge as Defendants Continue to Assure the Market of Leverage on SG&A**

52.     Just weeks after assuring investors that the Company was returning to leverage and just months after the Greenbergs' $32 million insider selling haul, on April 18, 2018, Defendants' stunned the market as Skechers reported its first quarter 2018 financial results, filed with the SEC on form 8-K signed by Defendant Weinberg (the "1Q 2018 Press Release").

53.     Rather than returning to "leverage," Defendants showed that they were not in control of their SG&A expenses at all as Skechers reported SG&A expense growth of 23.4% compared with sales growth of just 16.5%.  The additional expenses were blamed primarily on "international advertising expenses" and nearly $38 million in expenses to support "growth in the Company's joint venture and subsidiary business" including China.

54.     On this news, Skechers stock price declined $11.38, or 27%, from a closing price of $42.08 per share on April 19, 2018 to a closing price of $30.70 per share on April 20, 2018, wiping out $1.5 billion in market capitalization on unusually high trading volume.

55.     Analysts were completely dismayed by the Company's outpaced expense growth. Wedbush Securities downgraded Skechers from Outperform to Neutral explaining that "[o]ur issue is growth at any price…SKX certainly has the creative product and marketing engine to drive global growth. <u>However, it is clear the global infrastructure to handle international expansion is not keeping up and requiring additional labor, warehousing and other costs to sustain sales, putting prospects for meaningful EBIT margin expansion out of touch.</u>"

56.     On the Company's conference call with analysts that evening, several analysts again expressed concerns that the Company was not adequately focused on leveraging its SG&A expenses.   In one exchange with an analyst from B. Riley FBR, Inc., Defendant Weinberg defended the Company's rising costs as the result of a need to put in more infrastructure than anticipated, and assured investors that the Company would return to "leverage," *i.e.*, increase revenues faster than expenses, in the third quarter of 2018:

> **Jeff Van Sinderen [B. Riley FBR, Inc.]**
> And then leverage? Do you think leverage on SG&A starting in Q3 again?
>
> **David Weinberg**
> <u>I would think so.</u> You know, that's based on topline and where we are going. Part of the issue is, we have had more of the same we have had in the prior year. So, Korea was up but deleveraged somewhat more because we had to put a little more infrastructure than we had anticipated. China is anticipating such strong growth that we had to pump up expenses to handle the business that's coming and a bigger piece of that business is online, which has more infrastructure built because of the uniqueness of shipping one pair at a time for the size they are.
>
> **<u>So, we do believe that we will catch up, that the topline will be such and that we will be able to again start to leverage again in Q3.</u>** It should be a very positive time for us. Just like we felt last year Q1 would be a positive change for us this year as well. And you have to also remember, Jeff, that Easter went into Q1. So, of all the things that John was saying about the tough comps, Easter went into Q1, so all of the deliveries really were taken in Q1.

57.     The above statement identified in ¶56 was materially false and/or misleading and failed to disclose material adverse facts about the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants failed to disclose: (1) that Skechers lacked the operational infrastructure to handle demand and sustain true sales growth in its international markets; (2) that Skechers was relying

on expensive, third-party operational solutions to prop-up its growth; (3) that Skechers was unable to leverage its SG&A expenses (4) that Skechers' international sales growth was not sustainable; and (5) that, as a result of the foregoing, Defendants' statements about Skechers' business, operations, and prospects, were materially false and/or misleading and/or lacked a reasonable basis.

58.     But on July 19, 2018, the full truth emerged when Skechers issued a press release announcing its second quarter 2018 financial results, filed with the SEC as an exhibit to Form 8-K signed by Defendant Vandemore (the "2Q 2018 Press Release").  The 2Q 2018 Press Release stunned the market as Skechers reported just $1.13 billion in sales and earnings per share of $0.29, missing the Company's own guidance by $0.10. While sales grew 10.6% from the prior year quarter, SG&A Expenses grew by nearly twice that, 19.7%, causing earnings from operations to shrink by 5.7%, and net earnings to decline by almost 24%.   According to the 2Q 2018 Press Release, nearly 50% of the increase in general and administrative expenses was in China "to support continued expansion."

59.     During the Company's conference call with analysts, contrary to their previous statements that the Company was "focusing on managing its balance sheet" and would leverage its SG&A expenses, Defendants were now crystal clear that, in fact, the Company's SG&A expenses would exceed sales growth for the foreseeable future:

> **John Kernan [Cowen & Company]**
> So, I guess, my final question is a bigger picture question. There has been well over $1 billion of total top line growth. The past couple of years, there has not been much growth in EBIT. So, I'm just wondering at what point do you think you will trade top line growth for the ability to start growing top line in a more significant rate. Do you think if you pullback on G&A expenses, do you think the top line would decelerate significantly in line with that?
>
> **David Weinberg**
> We just don't necessarily think that way. We're into growth. We think that transition could sacrifice topline growth for EBIT will happen when the marketplace tells us we're getting too close to a saturation point. Right now, we are built for growth; we have the capital for growth, we wouldn't leave anything on the table...

13

60.     On this news, Skechers stock dropped $6.98, or 20.1%, from a closing price of $33.25 per share on July 19, 2018, to $26.27 per share on April 20, 2018, wiping out an additional $947 million in market cap.

61.     The market's reaction was swift. Multiple analysts downgraded Skechers' stock. UBS explained that "SKX's China wholesale eCom business (Tmall, etc.) is growing better than 44% y/y. However, because this business is growing so fast, SKX is requiring expensive, 3rd-party operational solutions to keep up with demand. This point, which we previously did not appreciate, explains much of the negative 2Q & 3Q SG&A surprises and our downward EPS revision."

62.     Similarly, Susquehanna analysts expressed concern that the Company's sales growth was perhaps only made possible by unsustainable expense growth: "there is clearly concern that G&A growth is being done to sell units into new distribution rather than build the brand and that sales will moderate significantly if management slows spending."

## CLASS ACTION ALLEGATIONS

63.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that acquired Skechers common stock between October 20, 2017 and July 19, 2018, inclusive, and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

64.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Skechers' common stock actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of Skechers shares were

traded publicly during the Class Period on the NYSE.  During the Class Period, Skechers had over 130 million shares of common stock outstanding. Record owners and other members of the Class may be identified from records maintained by Skechers or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

65.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

66.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

67.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

      a.    whether the federal securities laws were violated by Defendants' acts as alleged herein;

      b.    whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Skechers; and

      c.    to what extent the members of the Class have sustained damages and the proper measure of damages.

68.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

69.     The market for Skechers common stock was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Skechers common stock traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired Skechers common stock relying upon the integrity of the market price of the Company's common stock and market information relating to Skechers and have been damaged thereby.

70.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Skechers common stock, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading. The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Skechers' business, operations, and prospects as alleged herein.

71.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Skechers' business, practices and prospects. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its business, thus causing the Company's common stock to be overvalued and artificially inflated or maintained at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's common stock at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

72.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

73.     During the Class Period, Plaintiff and the Class purchased Skechers' common stock at artificially inflated prices and were damaged thereby.   The price of the Company's common stock significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

### APPLICABILITY OF PRESUMPTION OF RELIANCE
### (FRAUD-ON-THE-MARKET DOCTRINE)

74.     The market for Skechers common stock was open, well-developed and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to disclose, Skechers common stock traded at artificially inflated and/or maintained prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired the Company's common stock relying upon the integrity of the market price of Skechers common stock and market information relating to Skechers and have been damaged thereby.

75.     During the Class Period, the artificial inflation of Skechers common stock was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Skechers business, operations, and results. These material misstatements and/or omissions created an unrealistically positive assessment of Skechers and its business, operations, and results, thus causing the price of the Company's common stock to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company stock. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's common stock at such artificially inflated prices, and each of them has been damaged as a result.

76.     At all relevant times, the market for Skechers common stock was an efficient market for the following reasons, among others:

    a.  Skechers was listed and actively traded on the NYSE, a highly efficient and automated market;

    b.  As a regulated issuer, Skechers filed periodic public reports with the SEC and/or the NYSE;

    c.  Skechers regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

    d.  Skechers was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

77.     As a result of the foregoing, the market for Skechers common stock promptly digested current information regarding Skechers from all publicly available sources and reflected such information in Skechers' stock price. Under these circumstances, all purchasers of Skechers stock during the Class Period suffered similar injury through their purchase of Skechers stock at artificially inflated prices and a presumption of reliance applies.

78.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions. Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations, sales growth and prospects—information that Defendants were obligated to disclose—positive proof of reliance is

not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

79.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Skechers who knew that the statement was false when made.

## FIRST CLAIM
### Violation of Section 10(b) of The Exchange Act and
### Rule 10b-5 Promulgated Thereunder
### Against All Defendants

80.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

81.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Skechers common stock at artificially inflated and/or

maintained prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

82.     Defendants made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

83.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Skechers' sales and expense growth, business practices and prospects, as specified herein. Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Skechers' value and performance and continued growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Skechers and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock during the Class Period.

84.     Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and

familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

85.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Skechers' business practices and prospects from the investing public and supporting the artificially inflated and/or maintained price of its stock. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, practices, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

86.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Skechers common stock was artificially inflated during the Class Period. In ignorance of the fact that market prices of the Company's common stock were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the stock trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Skechers common stock during the Class Period at artificially high prices and were damaged thereby.

87.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Skechers was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Skechers common stock, or, if they had acquired such stock during the Class Period, they would not have done so at the artificially inflated prices which they paid.

88.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

89.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's common stock during the Class Period.

**SECOND CLAIM**
**Violation of Section 20(a) of The Exchange Act**
**Against the Individual Defendants**

90.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

91.     The Individual Defendants acted as controlling persons of Skechers within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements

were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

92.     In particular, the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

93.     As set forth above, Skechers and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a.   Declaring this action to be a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the Class defined herein;

b.   Awarding Plaintiff and the other members of the Class damages in an amount which may be proven at trial, together with interest thereon;

c.   Awarding Plaintiff and the other members of the Class pre-judgment and post-judgment interest, as well as their reasonable attorneys' and experts' witness fees and other costs; and

d.   Awarding such other relief as this Court deems appropriate.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED: September 4, 2018          **SAXENA WHITE PA**


/s/Steven B. Singer
STEVEN B. SINGER (SS-5212)
RHONDA CAVAGNARO (RC-9850)
10 Bank Street, 8th Floor
White Plains, New York 10606
Tel:    (914) 437-8551
Fax:    (888) 631-3611
Email: ssinger@saxenawhite.com
            rcavagnaro@saxenawhite.com

-and-

JOSEPH E. WHITE, III (JW-9598)
KENNETH M. REHNS (KR-9822)
150 East Palmetto Park Road, Suite 600
Boca Raton, Florida 33432
Tel:    (561) 394-3399
Fax:    (561) 394-3382
Email: jwhite@saxenawhite.com
            krehns@saxenawhite.com

*Counsel for Plaintiff and the Proposed Class*

# EXHIBIT A

## CERTIFICATION AND AUTHORIZATION

I, Dario Boccarossa, on behalf of Laborers Local 235 Benefit Funds ("Local 235"), hereby certify, as to the claims asserted under the federal securities laws, that:

1.  I have reviewed the complaint in this matter and I am authorized in my capacity as the Interim Fund Administrator of Local 235 to initiate litigation and to execute this Certification on behalf of Local 235.

2.  Local 235 did not purchase the securities that are the subject of this action at the direction of counsel, or in order to participate in any action arising under the federal securities laws.

3.  Local 235 is willing to serve as a representative party on behalf of the Class, including providing testimony at deposition and trial, if necessary.

4.  Local 235's transactions in Skechers USA, Inc. common stock are set forth in the attached "Schedule A."

5.  Local 235 has sought to serve and was appointed as lead plaintiff and/or representative party on behalf of a class in the following actions under the federal securities laws filed during the three-year period preceding the date of this Certification: *None*

6.  Local 235 has sought to serve as a lead plaintiff and representative party on behalf of a class in the following actions under the federal securities laws filed during the three-year period preceding the date of this Certification, but either withdrew its motion for lead plaintiff, was not appointed lead plaintiff or the lead plaintiff decision is still pending:

    *Oklahoma Law Enforcement Retirement System v. Adeptus Health Inc. et al*, Case No. 4:17-cv-00449 (E.D. Tex.)

7.  Local 235 will not accept any payment for serving as a representative party on behalf of the Class beyond Local 235's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class, as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.
Executed this ⟶ day of *SEPTEMBER*, 2018.

Laborers Local 235 Benefit Funds

Dario Boccarossa,
Interim Fund Administrator

## SCHEDULE A
### Laborers Local 235 Pension and Retirement Fund
### Transactions in Skeckers USA, Inc.
### Period: October 20, 2017 through July 19, 2018

**Beg. Hold.**          0

| Common Stock Purchases | | | | Common Stock Sales | | |
|---|---|---|---|---|---|---|
| Date | Shares | Price | | Date | Shares | Price |
| 02/09/18 | 50 | $40.86 | | 04/06/18 | 100 | $40.03 |
| 02/09/18 | 1,800 | $40.06 | | 04/23/18 | 800 | $29.33 |
| 02/09/18 | 500 | $40.86 | | 04/23/18 | 100 | $29.36 |
| 02/12/18 | 150 | $39.83 | | 05/02/18 | 500 | $28.33 |
| 02/12/18 | 700 | $39.95 | | 05/07/18 | 1,600 | $28.94 |
| 02/12/18 | 800 | $40.02 | | 05/11/18 | 425 | $29.09 |
| 02/14/18 | 200 | $40.41 | | 05/11/18 | 3,700 | $29.08 |
| 02/14/18 | 1,200 | $40.39 | | 05/16/18 | 550 | $30.21 |
| 02/23/18 | 70 | $39.72 | | | | |
| 02/26/18 | 600 | $40.95 | | | | |
| 02/27/18 | 400 | $41.28 | | | | |
| 03/05/18 | 650 | $40.71 | | | | |
| 03/12/18 | 200 | $40.93 | | | | |
| 03/12/18 | 200 | $40.72 | | | | |
| 03/12/18 | 10 | $40.66 | | | | |
| 03/15/18 | 200 | $40.12 | | | | |
| 04/05/18 | 20 | $40.76 | | | | |
| 04/13/18 | 25 | $42.15 | | | | |