# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LABORERS LOCAL 235 BENEFIT FUNDS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SKECHERS USA, INC., ROBERT GREENBERG, JOHN VANDEMORE, and DAVID WEINBERG,<br><br>Defendants. | Case:   1:18-cv-8039-NRB |
| STEVEN S. FISHMAN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SKECHERS USA, INC., ROBERT GREENBERG, JOHN VANDEMORE and DAVID WEINBERG,<br><br>Defendants. | Case:   1:18-cv-9510-NRB |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE NEW YORK FUNDS FOR APPOINTMENT AS LEAD PLAINTIFF, APPROVAL OF THEIR SELECTION OF COUNSEL AND CONSOLIDATION OF THE RELATED ACTIONS**

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | INTRODUCTION ................................................................................................... | 1 |
| II. | STATEMENT OF THE FACTS ............................................................................ | 4 |
| III. | ARGUMENT ........................................................................................................... | 5 |
| | A. Procedures Required by the PSLRA for the Appointment of Lead Plaintiff ........... | 5 |
| |     1. The New York Funds Have The Largest Financial Interest In This Litigation ........................................................................................ | 6 |
| |     2. The New York Funds Are a Small, Cohesive Group That Will Adequately Represent the Class .................................................................. | 7 |
| |     3. The New York Funds Otherwise Satisfy The Requirements Of Rule 23 ............................................................................................... | 9 |
| | B. The Court Should Approve The New York Funds' Selection Of Counsel ............ | 11 |
| | C. The Related Actions Should Be Consolidated ........................................................ | 13 |
| IV. | CONCLUSION ...................................................................................................... | 13 |

# **TABLE OF AUTHORITIES**

**Cases**

*Casper v. Song Jinan*,
  2012 WL 3865267 (S.D.N.Y. Sept. 6, 2012) .............................................................................. 7

*City of Brockton Ret. Sys. v. The Shaw Grp., Inc.*,
  2007 WL 2845125 (S.D.N.Y. Sept. 26, 2007) ........................................................................ 11

*Foley v. Transocean Ltd.*,
  272 F.R.D. 126 (S.D.N.Y. 2011) .............................................................................................. 7

*In re Barrick Gold Corp. Sec. Litig.*,
  2017 WL 4862779 (S.D.N.Y. Oct. 4, 2017) ............................................................................. 6

*In re eSpeed, Inc. Sec. Litig.*,
  232 F.R.D. 95 (S.D.N.Y. 2005) ................................................................................................ 3

*In re Kit Digital, Inc. Sec. Litig.*,
  293 F.R.D. 441 (S.D.N.Y. 2013) ............................................................................................ 11

*In re MGT Capital Invs., Inc*,
  2017 U.S. Dist. LEXIS 59130 (S.D.N.Y. Apr. 11, 2017) ................................................ 2, 7, 8

*In re Orion Sec. Litig.*,
  2008 WL 2811358 (S.D.N.Y. July 8, 2008) ............................................................................. 9

*In re Sequans Commc'ns S.A. Sec. Litig.*,
  2018 WL 740723 (E.D.N.Y. Feb. 6, 2018) .............................................................................. 8

*Kaplan v. Gelfond*,
  240 F.R.D. 88 (S.D.N.Y. 2007) ......................................................................................... 9, 13

*Lax v. First Merchs. Acceptance Corp.*,
  1997 WL 461036 (N.D. Ill. Aug. 11, 1997) ............................................................................. 6

*Plumbers, Pipefitters & MES Local Union No. 392 Pension Fund v. Fairfax Fin. Holdings Ltd.*,
  2011 WL 4831209 (S.D.N.Y. Oct. 12, 2011) .......................................................................... 9

*Reimer v. Ambac Fin. Grp., Inc.*,
  2008 WL 2073931 (S.D.N.Y. May 9, 2008) ................................................................ 2, 7, 8, 10

*Sallustro v. CannaVest Corp.*,
  93 F. Supp. 3d 265 (S.D.N.Y. 2015) ........................................................................................ 2

*Shi v. Sina Corp.*,
  2005 WL 1561438 (S.D.N.Y. July 1, 2005) .......................................................................... 10

**Statutes**

15 U.S.C. § 78u-4(a) ................................................................................................................ *passim*

**Other Authorities**

H.R. Conf. Rep. No. 104-369, at *34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 (1995) 10

**Rules**

Fed. R. Civ. P. 23 ......................................................................................................................... 3, 9

The CWA Local 1180 Members' Annuity Fund and CWA Local 1180 Administrative Benefits Fund (the "Local 1180" Funds) and Laborers Local 235 Benefit Funds ("Local 235" and, together with the Local 1180 Funds, the "New York Funds" or "Movants") respectfully submit this memorandum of law in support of the New York Funds' motion for (1) appointment as Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); (2) approval of their selection of Saxena White P.A. ("Saxena White") as Lead Counsel for the Class; (3) consolidation of the above-captioned related actions ("Related Actions") pursuant to Fed. R. Civ. P. 42(a); and (4) such other and further relief that the Court may deem just and proper.

I.     **INTRODUCTION**

Currently pending in this District are two securities class actions brought on behalf of all persons or entities who purchased or otherwise acquired Skechers USA, Inc. ("Skechers" or the "Company") securities between October 20, 2017 and July 19, 2018, inclusive (the "Class Period").[1] The Related Actions allege violations of Sections 10(b) and 20(a) of the Exchange Act as amended by the PSLRA (15 U.S.C. §§ 78j(b) and 78t), and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5), against Skechers and certain of its executive officers and directors.

Pursuant to the PSLRA, this Court must appoint the "most adequate plaintiff" to serve as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). In that regard, the Court is required to determine

---

[1] The Related Actions are *Laborers Local 235 Benefit Funds v. Skechers USA, Inc., et al.*, No. 1:18-cv-08039 (S.D.N.Y. Sept. 4, 2018) and *Fishman v. Skechers USA, Inc., et al.*, No. 1:18-cv-09510 (S.D.N.Y. Oct. 17, 2018). In the *Laborers* action, the Class is defined as all persons and entities that purchased or otherwise acquired Skechers common stock during the Class Period. The Fishman action expands the Class to include all Skechers securities.

1

which movant or group of movants has the "largest financial interest" in the relief sought by the Class in this litigation, and also whether such movants have made a *prima facie* showing that they are typical and adequate class representatives under Rule 23 of the Federal Rules of Civil Procedure.  *15 U.S.C. § 78u*-4(a)(3)(B)(iii)(I); *see Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 278-79 (S.D.N.Y. 2015) (noting that "courts have required only a *prima facie* showing that the requirements of Rule 23 are met" at the lead plaintiff phase under the PSLRA).

The New York Funds are the "most adequate plaintiff" and should be appointed Lead Plaintiff.  The New York Funds sustained losses totaling $301,376 in connection with their Class Period investments in Skechers securities.  The New York Funds are unaware of any proposed movant with greater losses and that otherwise satisfies the requirements of the PSLRA and the Federal Rules of Civil Procedure.[2, 3]

Movants are a small, cohesive group of institutional investors that have chosen to work together to serve as class representatives, and have committed to ensure that the action is prosecuted in an efficient and cost-effective manner.  Singer Decl., Ex. D.  The New York Funds include two sets of benefit funds that, both individually and together, have substantial losses as a result of their investments in Skechers securities.  This Court, under similar circumstances, has previously appointed small groups of investors as lead plaintiff.  *See Reimer v. Ambac Fin. Grp., Inc.*, No. 08-cv-1273, 2008 WL 2073931, at *4 (S.D.N.Y. May 9, 2008) (Buchwald, J.) (appointing group of 3 institutional investors as lead plaintiff); *In re MGT Capital Invs., Inc*, No.

---

[2] Movants' transactions in Skechers securities during the Class Period are set forth in the certifications attached as Exhibit B to the Declaration of Steven B. Singer in support of the present motion ("Singer Decl.").

[3] Charts setting forth the New York Funds' losses are attached as Exhibit C to the Singer Decl.

2

16-cv-7415, 2017 U.S. Dist. LEXIS 59130, at *9 (S.D.N.Y. Apr. 11, 2017) (Buchwald, J.) (appointing group of 2 individuals as lead plaintiff).

In addition, the New York Funds readily satisfy the relevant requirements of Rule 23 of the Federal Rules of Civil Procedure. In particular, their claims are typical of those of all members of the Class, and they will fairly and adequately represent the Class members.

Moreover, the New York Funds, which collectively manage hundreds of millions of dollars in assets, are the ideal Lead Plaintiffs contemplated by the PSLRA. *See In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 99 (S.D.N.Y. 2005) ("[T]he PSLRA was designed to favor institutional investors[.]"). Indeed, the New York Funds are a paradigmatic Lead Plaintiff under the PSLRA because they have extensive experience serving as a fiduciary, and are sophisticated institutional investors, both representing New York union benefits members and beneficiaries, with a substantial financial interest in the litigation, which provides the incentive and ability to effectively and efficiently supervise and monitor counsel. Further, the New York Funds fully understand the Lead Plaintiff's obligations to the Class under the PSLRA and, as demonstrated herein and in the New York Funds' Joint Declaration in support of their motion (*see* Singer Decl. Ex. D), are willing and able to undertake the responsibilities attendant to acting as Lead Plaintiff to guarantee the vigorous prosecution of this action. Moreover, Local 235 is also the first class member to have filed a complaint against Defendants to protect the interests of the proposed class.

The New York Funds have also demonstrated their adequacy through their selection of Saxena White as proposed Lead Counsel. Saxena White has substantial experience in successfully prosecuting securities class actions in this District and nationwide. *See* Saxena White's Firm Resumes, Singer Decl. Ex. E. Accordingly, based on the New York Funds'

substantial financial interest and their demonstrated commitment and ability to jointly oversee this action in a cohesive manner, the New York Funds respectfully request that the Court appoint them Lead Plaintiff and otherwise grant their motion.

## II.  STATEMENT OF THE FACTS[4]

Skechers designs and markets branded footwear for men, women, and children. ¶ 2.  As the Complaint alleges, in recent years, Skechers has experienced rapid sales growth, particularly in the Company's international markets driven largely by unsustainable increases in the Company's Selling, General & Administrative expenses ("SG&A").  *Id*.

Throughout the Class Period, in an effort to artificially inflate the price of Skechers' stock, Defendants touted the Company's strong sales growth, while falsely assuring investors that the Company was "focused on bringing … expenses in line with expected sales," and that the Company's disproportionate SG&A expense growth was slowing down.  ¶ 3.

However, in reality, Defendants knew that the Company did not have the operational infrastructure to meet demand for its products in China and other international markets.  ¶ 4. As a result, Defendants were not focusing on controlling SG&A expenses, nor would the overgrown SG&A expense growth abate.  *Id*.   Instead Defendants were relying on expensive, third-party operational solutions to support its sales figures creating illusory growth that was not sustainable.

Armed with this knowledge, members of the Company's founding family, including Defendant Greenberg, dumped thousands of shares of Skechers stock for $32 million in proceeds.  ¶ 5.

The truth began to emerge on April 18, 2018, when Skechers reported its first quarter 2018 financial results.  Contrary to Defendant's previous assurances, rather than "leveraging" the

---

[4] These facts are derived from the allegations in the first filed *Laborers* action, No. 1:18-cv-8039-NRB. All "¶" references are to complaint filed in the *Laborers* Action.

Company's SG&A expenses, Skechers' 23.4% SG&A expense growth had drastically outgrown the Company's 16.5% sales growth. ¶ 6. Even still, Defendants continued to reassure investors that the Company would return to leverage on SG&A expenses the very next quarter. *Id.* On this news, Skechers stock price declined $11.38, or 27%, from a closing price of $42.08 per share on April 19, 2018 to a closing price of $30.70 per share on April 20, 2018, wiping out $1.5 billion in market capitalization on unusually high trading volume. ¶ 7.

On July 19, 2018, the full truth emerged when Skechers announced its second quarter 2018 financial results. ¶ 8. While sales grew 10.6% from the prior year quarter, SG&A Expenses grew by nearly twice that, or 19.7% causing earnings from operations to decrease by 5.7%, and net earnings to decline by almost 24%. *Id*. Moreover, during the conference call with investors, Defendants were now crystal clear that, in fact, they did not care about the outpaced growth of SG&A expenses, telling one analyst "We just don't necessarily think that way. *Id*. We're into growth." On this news, Skechers stock dropped $6.98, or 20.1%, from a closing price of $33.25 per share on July 19, 2018, to $26.27 per share on April 20, 2018, wiping out an additional $947 million in market cap. ¶ 9.

### III.     ARGUMENT

#### A.     Procedures Required by the PSLRA for the Appointment of Lead Plaintiff

Section 21D of the PSLRA provides that in securities class actions, courts "shall appoint as lead plaintiff(s) the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of the class members." 15 U.S.C. §78u-4(a)(3)(B)(i).  In determining which class member is "the most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this Act is the person or group of persons that:
>
> (aa) has either filed the complaint or made a motion in response to a notice ...
>
> (bb) in the determination of the court, has the <u>largest financial interest</u> in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I) (Emphasis added).

As set forth herein, the New York Funds are the presumptive Lead Plaintiff and Daytona cannot offer any type of proof to rebut that presumption. See 15 U.S.C. §78u-4(a)(3)(B)(iii)(II) (stating that "proof" is required to rebut the presumption afforded to the presumptive lead plaintiff).

### 1. The New York Funds Have The Largest Financial Interest In This Litigation

The New York Funds should be appointed Lead Plaintiff because they have the largest financial interest in the relief sought by the Class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii). In determining "largest financial interest" under the PSLRA, as this Court has often reiterated, the majority approach considers the "*Lax*" factors, which look to: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered. *In re Barrick Gold Corp. Sec. Litig.*, No. 17-cv-3507, 2017 WL 4862779, at *2 (S.D.N.Y. Oct. 4, 2017) (Buchwald, J.) (*citing Lax v. First Merchs. Acceptance Corp.,* 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997)); *Casper v. Song Jinan*, No. 12-cv-4202, 2012 WL

3865267, at *1 (S.D.N.Y. Sept. 6, 2012) (Buchwald, J.).[5]  As set forth herein, the New York Funds purchased 26,275 shares of Skechers common stock during the Class Period for a total net expenditure of $301,376.  Significantly, the New York Funds incurred substantial losses from their transactions in Skechers common stock during the Class Period totaling $301,376.  *See* Singer Decl., Exs. B, C.

To the best of the New York Funds' knowledge, there are no other applicants who have sought, or are seeking, Lead Plaintiff appointment that have a larger financial interest arising from transactions in Skechers securities during the Class Period.  Accordingly, the New York Funds have the largest financial interest of any qualified movant seeking Lead Plaintiff status and are the presumptive "most adequate plaintiff."  15 U.S.C. § 78u-4(a)(3)(B)(iii).

### 2. The New York Funds Are a Small, Cohesive Group That Will Adequately Represent the Class

As this Court has previously held, "a group may be designated as the lead plaintiffs." *Reimer,* 2008 WL 2073931, at *2.  The New York Funds are a small – "indeed they are the smallest possible group" – and cohesive group of two New York-based sophisticated institutional investors interested in working together here to serve as class representatives, and they will ensure the action is prosecuted in an efficient and cost-effective manner by consulting with one another on a regular basis and prior to major litigation events as necessary.  Singer Decl., Ex. D. *In re MGT Capital,* 2017 U.S. Dist. LEXIS 59130, at *9.  In addition, the New York Funds share a common goal and fiduciary obligation to protect the interests of its members and beneficiaries

---

[5] As this Court has also stated in *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 131 (S.D.N.Y. 2011), where a movant's sales occurred after a partial corrective disclosure, as the New York Funds' sales did here, the number of net shares purchased, and net funds expended is "not [] terribly relevant to which movant has the greatest financial interest."

and their retirement benefits. *See* Singer Decl., Ex. D, ¶¶ 10-11. The New York Funds have submitted a Joint Declaration which includes a description of both of its members, an explanation of how the New York Funds sought each other out to jointly prosecute this action and how their group was formed, how the New York Funds have functioned and will function together, and the mechanisms by which the Movants will communicate. *Id.*; *Reimer*, 2008 WL 2073931, at *3 (appointing group of three pension funds that submitted a declaration showing that they were "cooperating and pursuing the litigation separately and apart from their lawyers" and "have held joint conference calls to discuss the litigation and formulate a strategy."); *In re MGT Capital,*, 2017 U.S. Dist. LEXIS 59130, at *9 (appointing group of two investors who submitted a joint declaration "attesting to their ability and willingness to coordinate to effectively represent the class."); *In re Sequans Commc'ns S.A. Sec. Litig.*, No. 17-cv-4665, 2018 WL 740723, at *7 (E.D.N.Y. Feb. 6, 2018) (appointing group that submitted joint declaration detailing assurances that the group will work together effectively). The New York Funds will utilize consensus decision-making and have directed counsel to keep them abreast of all developments in the action. *Id.* at ¶13. Both members of this group are sophisticated investors who collectively are responsible for the management of hundreds of millions of dollars of investments and who understand their obligations as lead plaintiff and who intend to actively supervise their lawyers and direct the course of the litigation. *Id.* at ¶¶ 3-6, 11-12. In fact, prior to filing this motion, the New York Funds met telephonically to discuss their shared objectives, and the processes for managing the litigation cohesively and efficiently and their initial strategy for litigating the case. *Id.* at ¶¶ 10-11. The New York Funds believe that by pooling their significant resources they will be able to maximize the Class' potential recovery though this action. *Id.* at ¶¶ 8-9.

### 3. The New York Funds Otherwise Satisfy The Requirements Of Rule 23

In addition to possessing the largest financial interest in the outcome of the litigation, the New York Funds otherwise satisfy the adequacy and typicality requirements of Fed. R. Civ. P. 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc); *see Kaplan v. Gelfond,* 240 F.R.D. 88, 94 (S.D.N.Y. 2007) ("typicality and adequacy of representation are the only provisions of Rule 23 relevant to the determination of lead plaintiff under the PSLRA" and "at this stage of the litigation, only a preliminary showing of typicality and adequacy is required.") (Buchwald, J.) (internal citations omitted).  Here, the New York Funds indisputably satisfy the typicality and adequacy requirements.

The New York Funds' claims are typical of the claims of other purchasers of Skechers securities.  Typicality can be established by showing that the proposed Class representative's "claims arise from the same conduct from which the other class members' claims and injuries arise." *Id.*, 240 F.R.D. at 94 (*citing In re eSpeed*, 232 F.R.D. at 102); *In re Orion Sec. Litig.*, No. 08-cv-1328 (RJS), 2008 WL 2811358, at *5 (S.D.N.Y. July 8, 2008).  Here, the New York Funds and all other Class members' claims arise from the same course of events, and their legal arguments to establish Defendants' liability are nearly identical.  Indeed, like all other Class members, the New York Funds: (1) purchased Skechers securities during the Class Period; (2) at prices allegedly artificially inflated by Defendants' materially false and misleading statements and/or omissions; and (3) were damaged thereby. *See Plumbers, Pipefitters & MES Local Union No. 392 Pension Fund v. Fairfax Fin. Holdings Ltd.*, No. 11-cv-5097(JFK), 2011 WL 4831209, at *2 (S.D.N.Y. Oct. 12, 2011) (finding typicality requirement "easily met" when proposed Lead Plaintiff "asserted that it purchased [the company's] securities during the class period and was

injured by false and misleading representations made by defendants"). As such, the New York Funds are typical Class representatives.

The New York Funds similarly satisfy the adequacy requirement of Rule 23. Under Rule 23(a)(4) of the Federal Rules of Civil Procedure, the representative party must "fairly and adequately protect the interests of the Class." Fed. R. Civ. P. 23(a)(4). In order for the Class's interests to be fairly and adequately represented, "(1) there should be no conflict between the proposed lead plaintiff and the members of the class, (2) the selected counsel should be qualified, experienced, and able to conduct the litigation, and (3) the lead plaintiff should have a sufficient interest in the outcome to insure vigorous advocacy." *Shi v. Sina Corp.*, No. 05-cv-2154-NRB, 2005 WL 1561438, at *3 (S.D.N.Y. July 1, 2005) (Buchwald, J.) (citation omitted); *Orion*, 2008 WL 2811358, at *4. The New York Funds satisfy these elements because their substantial financial stake in the litigation provides the ability and incentive to vigorously represent the Class' claims. The New York Funds' interests are perfectly aligned with those of the other Class members and are not antagonistic in any way. Further, there are no facts to suggest any actual or potential conflict of interest or other antagonism between the New York Funds and the other Class members.

Moreover, the New York Funds are the very sort of Lead Plaintiff envisioned by Congress in its enactment of the PSLRA—a sophisticated group of New York-based institutional investors with a substantial interest in the litigation. *See* H.R. Conf. Rep. No. 104-369, at *34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 (1995) (explaining that "increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions"); *see also Reimer,* 2008 WL 2073931, at *3 (appointing group of three pension funds as Lead Plaintiff); *City of Brockton Ret.*

10

*Sys. v. The Shaw Grp., Inc.*, No. 06-cv-8245(CM)(MHD), 2007 WL 2845125, at *5 (S.D.N.Y. Sept. 26, 2007) (appointing two public pension funds as Lead Plaintiff).

Finally, the New York Funds have demonstrated their adequacy through their selection of Saxena White as Lead Counsel to represent the Class in this action. As discussed more fully below, Saxena White is highly qualified and experienced in the area of securities class action litigation and has repeatedly demonstrated its ability to prosecute complex securities class action lawsuits effectively.

### B. The Court Should Approve The New York Funds' Selection Of Counsel

The Court should approve the New York Funds' selection of Saxena White as Lead Counsel on behalf of the Class. Pursuant to the PSLRA, a movant shall, subject to Court approval, select and retain counsel to represent the class it seeks to represent, and the Court should not disturb the Lead Plaintiff's choice of counsel unless it is necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); *see also In re Kit Digital, Inc. Sec. Litig.*, 293 F.R.D. 441, 448 (S.D.N.Y. 2013) ("The PSLRA evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention") (internal quotations and citations omitted). Here, the New York Funds retained Saxena White as proposed Lead Counsel to represent the Class.

As demonstrated by its firm resume,[6] Saxena White has extensive experience in successfully prosecuting complex litigation on behalf of shareholders and is lead or co-lead counsel in major securities class and derivative actions nationwide, including in this District. *See e.g., Westchester Putnam Counties Heavy and Highway Laborers Local 60 Benefit Funds v. Brixmor Property Group, Inc. et al,* No. 1:16-cv-02400-AT (S.D.N.Y.) (Saxena White served as

---

[6] *See* Saxena White's Firm Resume, attached as Exhibit E to the Singer Decl.

11

lead counsel in $28 million settlement for shareholders in a securities fraud action); In terms of the benefits conferred upon Saxena White's clients, the firm has achieved resounding successes on behalf of shareholders nationwide as Saxena White's efforts in investor-related litigations have resulted in significant monetary benefits and corporate governance reforms. *See, e.g., In re Bank of America Corp. Securities Derivative, and ERISA Litigation*, 09-md-2058-PKC (S.D.N.Y.) ($62.5 million recovery on behalf of nominal defendant and adoption of significant corporate governance reforms); *Central Laborers' Pension Fund v. SIRVA, Inc.*, 04 C 7644 (N.D. Ill.)($53.3 million recovery and important corporate governance reforms); *City Pension Fund for Firefighters and Police Officers in the City of Miami Beach v. Aracruz Celulose, S.A., et al.*, No. 1:08-cv-23317-JAL (S.D. Fla. July 17, 2013) ($37.5 million settlement for shareholders in a securities fraud action against Aracruz Celulose, S.A.); *In re Sadia S.A. Securities Litigation*, 08-cv-09528-SAS (S.D.N.Y.) ($27 million settlement for shareholders in a securities fraud action against Sadia, S.A.).

Judges in this Circuit and around the country have repeatedly recognized that Saxena White has the experience and resources to successfully and efficiently prosecute complex class litigation as Lead Counsel. For example, in *Schuler v. NIVS Intellimedia Technology Group, Inc.*, No. 11-cv-2484 (KMW) (S.D.N.Y. Mar. 19, 2015), Judge Wood, in commending Saxena White's "excellent representation of the class," noted that "Saxena White's work has been outstanding" and "impressively thorough." In *In re Maxwell Technologies, Inc*. No. 3:13-cv-00580-BEN (S.D.Cal.), Judge Benitez of the United States District Court for the Southern District of California appointed Saxena White as sole Lead Counsel, noting that "Saxena White has extensive experience litigating securities class actions, and has successfully prosecuted numerous securities fraud class actions on behalf of investors." In *Fernandez v. Knight Capital*

*Group, Inc.*, No. 12-cv-06760 (D.N.J.), Judge Arleo noted that Saxena White, serving as Lead Counsel, "are national experts in the field of securities and complex litigation, and I am satisfied that their personal skill and efforts were the large reason why this case was able to settle on such favorable terms."

### C. The Related Actions Should Be Consolidated

The *Laborers* Action, filed on September 4, 2018, and the follow-on *Fishman* Action, filed on October 17, 2018, present identical factual and legal issues because they each allege claims under Sections 10(b) and 20(a) of the Exchange Act, allege identical Class Periods, name the same Defendants, and arise out of the same misstatements. In fact, all that separates the two cases is the Fishman Action's expansion of the Class to include all securities holders. *Kaplan*, 240 F.R.D. at 91 ("Differences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interests of judicial economy served by consolidation."). Accordingly, consolidation is appropriate under Rule 42(a) of the Federal Rules of Civil Procedure.

### IV. CONCLUSION

For the reasons discussed above, the New York Funds respectfully request that the Court: (1) appoint them to serve as Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Exchange Act, 15 U.S.C. § 78u-4(a)(3)(B); (2) approve their selection of Saxena White as Lead Counsel; (3) consolidate the Related Actions; and (4) grant such other relief as the Court may deem just and proper.

Dated:  November 5, 2018

Respectfully Submitted,

**SAXENA WHITE P.A.**

*/s/ Steven B. Singer*
Steven B. Singer (SS-5212)
10 Bank Street, 8th Floor
White Plains, New York 10606
Telephone: (914) 437-8551
Facsimile: (888) 631-3611
ssinger@saxenawhite.com

Maya Saxena (*pro hac vice* forthcoming)
Joseph E. White, III
Lester R. Hooker (*pro hac vice* forthcoming)
Kenneth M. Rehns (KR-9822)
150 East Palmetto Park Road
Suite 600
Boca Raton, FL 33432
Telephone: (561) 394-3399
Facsimile: (561) 394-3382
msaxena@saxenawhite.com
jwhite@saxenawhite.com
lhooker@saxenawhite.com
krehns@saxenawhite.com

*Counsel for the New York Funds and Proposed Lead Counsel for the Class*

## **CERTIFICATE OF SERVICE**

I, Steven B. Singer, hereby certify that, on November 5, 2018, I caused the foregoing document to be filed with the Court via the Southern District of New York's Electronic Filing System. All Counsel of Record are required to be registered with the ECF System and will receive electronic notification of this filing.

*/s/ Steven B. Singer*
Steven B. Singer
